## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TERESA SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-4527 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| TOOTSIE ROLL INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
|                       | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Teresa Sanchez brought eight claims against her employer, Tootsie Roll Industries, LLC, when the company laid her off. She alleged that the candy company discriminated against her on various grounds, including her sex, national origin, age, disability, and so on. After discovery, the company moved for summary judgment. The company presented evidence that Sanchez was on restricted duty status, and had the lowest seniority of any of the eligible employees.

For the reasons stated below, the company's motion for summary judgment is granted.

### Non-Compliance with the Rules

The Court begins with the Local Rules. Sanchez did not respond to Tootsie Roll's statement of material facts in a manner that complied with the Local Rules. As a result, the company's properly supported facts are taken as true for purposes of its motion.

The Local Rules require parties to follow a specific procedure when filing and opposing a motion for summary judgment. All litigants – including *pro se* litigants – must follow the Local Rules or face the consequences of non-compliance. Sanchez, a *pro se* litigant, is no exception.

Local Rule 56.1 governs the procedures for filing a motion for summary judgment. The moving party must provide a "statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." *See* L.R. 56.1(a)(2). "Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." *See* L.R. 56.1(d)(2).

The moving party must submit evidence that supports each of the proposed facts. "All evidentiary material identified in LR 56.1(a)(2) and LR 56.1(b)(3) citations must be included as numbered exhibits with the statements of fact." *See* L.R. 56.1(d)(3).

Local Rule 56.1 also explains how to respond to a motion for summary judgment. The non-moving party must file a brief, plus a "response to the LR 56.1(a)(2) statement of material facts that complies with LR 56.1(e)." *See* L.R. 56.1(b)(2). That response "must consist of numbered paragraphs corresponding to the numbered paragraphs" of the movant's statement of facts. *See* L.R. 56.1(e)(1).

To help *pro se* litigants, the Local Rules require parties to serve a notice that explains the procedure, so that they are not lost at sea. *See* L.R. 56.2. That way, unrepresented parties will receive clear instructions about what they need to file, and how they need to do it.

Substantial compliance with Local Rule 56.1 is not enough. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). All parties, including *pro se* litigants, must fully comply with Local Rule 56.1. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules.").

Compliance is necessary for the smooth running of the wheels of justice. The Local Rules are designed to give district courts the information that they need to assess whether a case

deserves a trial. The uniformity of the procedure – across hundreds of cases on a district court's docket – promotes efficiency and speeds things along. It helps courts manage a pile of motions in a mountain of cases.

Consistent with the Local Rules, Tootsie Roll filed a statement of undisputed facts with its motion for summary judgment, and supported its facts with admissible evidence. *See* Def.'s Statement of Facts (Dckt. No. 79). The company also served Sanchez a Local Rule 56.2 Notice that explained the requirements of Local Rule 56.1. *See* Rule 56.2 Statement (Dckt. No. 80).

Sanchez did file a response to the company's statement of facts, but she did not comply with the Local Rules. She admitted many of the company's facts. For the remaining facts, she did not put any evidence on the other side of the scale. She did not offer countervailing evidence, and she did not make any evidentiary objections that would call into question the company's facts. So, the punchline is that the company's facts are undisputed.

First, Sanchez expressly admitted the facts in 31 of Tootsie Roll's 78 paragraphs. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 1–9, 11, 17–18, 26–27, 46–47, 52–54, 58–59, 64, 70–78 (Dckt. No. 84). The Court accepts those undisputed facts for purposes of summary judgment.

Second, Sanchez omitted responses (*i.e.*, admissions or denials) to five of Tootsie Roll's facts. *Id.* at ¶¶ 50–51, 55–56, 62. The Local Rule 56.2 Notice warns *pro se* litigants of the consequences of failing to respond to a statement of material facts: "If you do not respond to a fact asserted by the defendant, the judge may decide that you have admitted that the fact is true." *See* L.R. 56.2. Sanchez received this warning and still did not respond. Without any response, those five facts are deemed admitted. *See* L.R. 56.1(e)(3).

Third, Sanchez denied 18 facts without any explanation or citation to the record. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 30, 32, 34, 36–45, 49, 57, 60, 63, 69 (Dckt. No. 84). A flat denial is not enough. Allegations and denials are enough at the pleading stage, but at the summary judgment stage, parties must come forward with facts and evidence. Again, Tootsie Roll gave Sanchez a Local Rule 56.2 Notice, which explains that disputing a fact requires the non-movant to "briefly explain why you dispute the fact and cite the specific page(s) of evidence that supports your position." *See* L.R. 56.2. Sanchez did not support her denials with explanations, let alone evidence. The facts in those 18 paragraphs are deemed admitted. *See Towers v. Team Car Care, LLC*, 2022 WL 408097, at *4 (N.D. Ill. 2022) ("Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment.").

Fourth, Sanchez denied the remaining 24 paragraphs with an explanation of her denial, but no citations to the record. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 10, 12–16, 19–25, 28–29, 31, 33, 35, 48, 61, 65–68 (Dckt. No. 84). While some of her responses refer to certain documents, she does not include any record citations. *See, e.g.*, *id.* at ¶ 10 (mentioning the collective bargaining agreement). She also attached various documents to her response, presumably to support these denials. *See* Attachments (Dckt. No. 84, at 18–32 of 32).

The Court will not dig through the summary judgment record to identify disputed issues of fact or evidentiary support for a party's claims. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("We have repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."). A plaintiff has the burden to present evidence supporting his or her own case.

So the Court accepts those facts as true (*i.e.*, the 24 paragraphs that lacked a response with a citation to specific evidence in the record). *See* L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Patel v. Brennan*, 2021 WL 5937769, at *2 (N.D. Ill. 2021) ("The non-movant must come forward with evidence, not expressions of disagreement.").

In sum, Sanchez did not respond to Tootsie Roll's statement of material facts in a manner that complied with the Local Rules. She denied facts without offering countervailing evidence, which doesn't cut it. As a result, the Court adopts the company's properly supported facts.

That said, Sanchez's failure to adequately respond does not mean that Tootsie Roll immediately prevails on its motion for summary judgment. While the Court accepts most of its facts as true, the burden remains with the movant, Tootsie Roll, to show that it is entitled to judgment as a matter of law. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant.").

This Court views the undisputed facts in Sanchez's favor, considers her claims in light of the undisputed facts, and decides whether there is any genuine need for a trial. With those standards in mind, the Court turns to the record.

**Background**

Tootsie Roll Industries, LLC is a candy company that makes a number of confections, including the popular Tootsie Roll and Tootsie Pop. *See* Def.'s Statement of Facts, at ¶ 1 (Dckt. No. 79). The company produces and distributes candy from its Chicago facility, which also serves as the company's headquarters. *Id.* at ¶ 2.

A bargaining unit, represented by Local Union No. 1 Bakery, signed a collective bargaining agreement with Tootsie Roll. *Id.* at ¶ 9. The terms and conditions of that CBA govern union members' employment with the company. *Id.*

Relevant here, the CBA sets out a seniority-based procedure that Tootsie Roll must follow when conducting employee layoffs. *Id.* at ¶ 11. Basically, if the demand for candy decreases, Tootsie Roll may have to shut down production lines, which can result in layoffs. *Id.* at ¶ 10. At that point, the CBA mandates that the seniority of an employee determines who is laid off. *Id.* at ¶ 12. Junior employees go out the door first. Last one in, first one out.

But seniority isn't the only consideration. There is an exception for employees in "restricted duty status." Tootsie Roll may let go of more senior employees in restricted duty status before less senior employees who are not in restricted duty status.[1] *Id.* at ¶ 14. So both seniority and status play a role when deciding who to lay off.

Restricted duty status is what it sounds like. An employee who is temporarily unable to perform all essential job functions – but who can still maintain ancillary duties – may request the

---

[1] Sanchez disputes whether Tootsie Roll can lay off restricted duty status employees before lesser senior employees who are not in restricted duty status. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 13–14 (Dckt. No. 84). But Sanchez provides no evidence for her denial. She points to the CBA – and appears to have attached sections of the CBA to her response – but she puts forward no evidence that Tootsie Roll *cannot* begin layoffs with restricted duty employees under the CBA. If Sanchez believes Tootsie Roll's practice violates the CBA, that would be a different claim than what she has alleged.

6

status.  *Id.* at ¶ 20.  If Tootsie Roll grants their request, the employee joins the Repack

Department to focus on light-duty work.  *Id.* at ¶¶ 21–22.

So, seniority prevails when it comes to layoffs, unless Tootsie Roll is choosing between

an employee who is in restricted duty and an employee who is not in restricted duty.  In that

case, the company may lay off the senior employee in restricted duty status *before* the junior

employee who is not in restricted duty status.  *Id.* at ¶¶ 14–15.

In 2019, Tootsie Roll laid off some employees.  Deciding who to layoff required multiple

steps.  Each week in 2019, the company's production planner circulated its projected staffing

needs to all Chicago plant managers based on production demands.  *Id.* at ¶ 23.  One of those

plant managers, Ken Jansky, reviewed the available work in his department along with any

available light-duty work in all departments.  *Id.* at ¶ 24.  Jansky then compiled all the

information to identify and review whether Tootsie Roll had too much, too little, or just enough

light-duty work for employees on restricted duty status.  *Id.* at ¶ 25.

Jansky would send this information to Tootsie Roll's Employment Supervisor, Lisa

Malagon.  *Id.* at ¶ 26.  Once Malagon received the data, she would review Tootsie Roll's "Plant

Seniority Report."  *Id.* at ¶ 28.  From there, Malagon could go in a number of different

directions, depending on whether the company had too many, too few, or the right number of

workers.  She could:  (1) select the least senior employees in restricted duty status for layoffs;

(2) recall from layoff any restricted duty employees; or (3) "roll over" the seniority report for

restricted duty employees.[2]  *Id.*

Enter Plaintiff Teresa Sanchez.  Sanchez started working at Tootsie Roll in 1995, and she

continued to work at the company for more than two decades.  *Id.* at ¶ 3.  At the time of the

---

[2]  Tootsie Roll never defines what "rolling over" the seniority report means.  The Court assumes that it
means Malagon would not layoff any employees in restricted duty status that week.

alleged discrimination in 2019, Sanchez was 58 years old. *See* Am. Cplt., at ¶ 94 (Dckt. No. 26, at 27 of 45). She is a woman with a national origin in Mexico, and she has difficulties performing all the essential aspects of her job because of a physical impairment. *See* Def.'s Statement of Facts, at ¶ 30 (Dckt. No. 79).

In October 2017, Sanchez started working in a restricted duty capacity because she twisted her ankle. *Id.*; *see also* Sanchez Dep., at 22:21 – 23:23 (Dckt. No. 79-2, at 11–12 of 84). At some point in 2018 (the parties don't say exactly when), Sanchez filed grievances in her capacity as Union Steward. *See* Def.'s Statement of Facts, at ¶ 69 (Dckt. No. 79). Sanchez believed that Tootsie Roll laid off employees on restricted duty status out of order, meaning out of seniority. *Id.* The Union did not advance her claim to arbitration. *Id.*; *see also* Sanchez Dep., at 23:18-23.

At the end of that year, in December 2018, four employees were working in a restricted duty capacity, including Sanchez. *See* Def.'s Statement of Facts, at ¶¶ 31, 33 (Dckt. No. 79). Of those four employees, Sanchez had the lowest seniority. *Id.* at ¶¶ 4, 32. All four employees, including Sanchez, were women. *Id.* at ¶ 46.

On Monday, February 25, 2019, another employee returned to work after a leave of absence. *Id.* at ¶ 36. That employee, a woman, rejoined the Repack Department and went on a restricted duty status. *Id.* She also had a higher seniority than Sanchez. *Id.*

So, there were five female employees working in restricted duty assignments during the week of February 25, 2019. *Id.* at ¶ 38. And Sanchez had the lowest seniority of the five women. *Id.* at ¶¶ 4, 32, 36.

That week, Tootsie Roll's production planner, Jansky, went through the multi-step process for laying off an employee. *Id.* at ¶ 40. After reviewing various departments and their

staffing, Jansky concluded that the company had enough work for only four restricted duty employees. *Id.* at ¶ 41. Jansky sent his report to Malagon, who decided that she needed to lay off the least senior person on restricted duty status. *Id.* at ¶ 42.

On Wednesday, February 27, 2019, Tootsie Roll informed Sanchez that she would be laid off effective on Friday, March 1, 2019. *Id.* at ¶ 43. When Tootsie Roll laid off Sanchez, five other employees who had worked at the Repack Department (*i.e.*, restricted duty status) had already been laid off. *Id.* at ¶ 44. All five were less senior than Sanchez. *Id.* And two of those five employees were men. *Id.* at ¶¶ 44, 47.

The following week, on March 4, 2019, Tootsie Roll returned 14 employees to work from layoff. *Id.* at ¶ 59. None of those 14 employees were in a restricted duty status when they were laid off. *Id.* at ¶ 60. And none of those employees were placed in restricted duty status or in the Repack Department when they came back to work. *Id.* at ¶¶ 60–61.

On April 1, 2019, Tootsie Roll recalled Sanchez back to work in the Repack Department in a restricted duty status. *Id.* at ¶ 52.

Before Sanchez was called back to work, she filed a Charge of Discrimination with the EEOC. *See* EEOC Charge (Dckt. No. 26, at 34 of 45). On April 4, 2019, the EEOC issued Sanchez a Notice of Right to Sue letter. *See* Notice of Right to Sue (Dckt. No. 26, at 33 of 45).

Sanchez filed this *pro se* lawsuit in July 2019. *See* Cplt. (Dckt. No. 1). She filed an amended complaint in February 2020. *See* Am. Cplt. (Dckt. No. 26, at 1–32 of 45). At that point, Sanchez was still employed by Tootsie Roll.[3]

---

[3] Sanchez's current employment status isn't relevant to her claims, but she may have been laid off from Tootsie Roll in September 2021. *See* IFP Application, at ¶ 8 (Dckt. No. 82, at 2 of 5) ("I was laid off on 9/10/2021."). The Court mentions her employment status only as additional background.

The amended complaint included eight counts. Counts I is a discrimination claim under Title VII. Count II is a retaliation claim under Title VII. Count III is a hostile work environment claim under Title VII. Count IV is a claim of discrimination under the Age Discrimination in Employment Act ("ADEA"). Count V is a disability claim under the Americans with Disabilities Act ("ADA"). Counts VI–VIII are claims under section 1981 (discrimination, retaliation, and hostile work environment/harassment based on race, respectively).

Tootsie Roll moved to dismiss the amended complaint in its entirety. *See* Def.'s Mtn. to Dismiss (Dckt. No. 40). The Court granted in part and denied in part that motion. *See* 5/18/21 Order (Dckt. No. 57).

As this Court explained in its Order, Sanchez's federal complaint suffered from some defects. Her complaint didn't exactly line up with her EEOC charge – she included theories of discrimination in her complaint that weren't in the EEOC charge (*i.e.*, race and color discrimination, and failure to accommodate a disability), and she presented new facts and adverse actions. *Id.* at 2–5. She also alleged discrimination that occurred outside the statute of limitations period, and she failed to allege any facts showing discrimination based on race. *Id.* at 6–7. So the Court's ruling trimmed the edges of the complaint.

This Court dismissed Count III (hostile work environment under Title VII) and Counts VI–VIII (claims under section 1981). *Id.* at 7. And the Court dismissed any theories of discrimination that weren't discussed in the EEOC charge. *Id.*

The Order also clarified what was at issue moving forward. The Court allowed Count I (Title VII discrimination), Count II (retaliation), Count IV (ADEA discrimination), and Count V (ADA discrimination) to survive to the extent that they relied on Sanchez's March 1, 2019

10

layoff, and to the extent that the claims related to discrimination based on sex, national origin, retaliation, age, and disability (only).  *Id.*

Now before the Court is Tootsie Roll's motion for summary judgment.  *See* Def.'s Mtn. for Summ. J. (Dckt. No. 77).

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the non-moving party, giving her the benefit of all reasonable inferences.  *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).  The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists.  *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).  Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant.  *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

**Analysis**

Sanchez opposes the motion for summary judgment, but her arguments appear almost exclusively in her response to Tootsie Roll's statement of material facts. *See* Pl.'s Resp. to Def.'s Statement of Facts (Dckt. No. 84). Her memorandum of law consists of one paragraph, in which she "respectfully asks the court to allow her to continue to trial since Tootsie Roll has failed to allege 'sex discrimination' which one [sic] of the surviving claims." *See* Pl.'s Resp., at 1 (Dckt. No. 85).

The Court treats Sanchez's response to Tootsie Roll's statement of material facts as her substantive response to the motion. The Court also looks to the excerpts of her deposition testimony in the record to help explain her position.

Sanchez does not support any of her arguments with legal authorities. The Court nonetheless "construe[s] pro se filings liberally and [will] address the discernable arguments." *Wilson v. Brennan*, 724 F. App'x 466, 469 (7th Cir. 2018). The Court will extend Sanchez some latitude, because she is doing the best that she can as a *pro se* litigant.

**I.      Title VII Discrimination (Count I)**

The first claim is a discrimination claim under Title VII. Sanchez alleges that the company discriminated against her on the basis of her sex and national origin.

To present a *prima facie* case, Sanchez must come forward with evidence that "(1) [she] is a member of a class protected by the statute, (2) that [she] has been the subject of some form of adverse employment action (or that [she] has been subjected to a hostile work environment), and (3) that the employer took this adverse action on account of [her] membership in the protected class." *See Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (citation omitted).

Traditionally, a plaintiff could prove discrimination through two routes. One option is the direct method. Under that method, the plaintiff "may present either direct or circumstantial evidence of discrimination." *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). That is, a plaintiff may submit evidence "explicitly linking an adverse employment action to an employer's discriminatory animus, [or] circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action." *See Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (citations omitted).

Another route is the indirect method, meaning the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that approach, the plaintiff "must make a prima facie case with evidence that: (1) she is a member of a protected class; (2) she met [defendant's] legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *See Chaib*, 819 F.3d at 342. If the plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *See Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir. 2020).

But in recent years, the Seventh Circuit has moved away from a strict devotion to the direct and indirect methods, and has adopted a more holistic approach. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Tootsie Roll relies on the *McDonnell Douglas* burden-shifting framework in its motion for summary judgment. *See* Def.'s Mem. in Supp. of its Mtn. for Summ. J., at 8–11 (Dckt. No.

78). The company argues that Sanchez has not offered a *prima facie* case of sex or national origin discrimination.

Sanchez does not mention or adopt any method of analysis. So the Court follows Tootsie Roll's lead. That said, in addition to considering the *McDonnell Douglas* standard, the Court evaluated the evidence as a whole under *Ortiz*, too. So, the Court considered the entire record, viewing the evidence as a whole, with and without using the lens of *McDonnell Douglas*. *See Ortiz*, 834 F.3d at 766; *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022) ("We have emphasized that courts must assess the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself, regardless of whether the court also analyzes the evidence pursuant to *McDonnell Douglas*.") (cleaned up).

The Court will start with the sex discrimination claim. Sanchez has failed to come forward with sufficient evidence to support a verdict in her favor.[4] The parties focus entirely on the fourth prong of the *McDonnell Douglas* framework: whether similarly situated employees outside of Sanchez's protected class (female) were treated more favorably. The Court begins and ends its analysis on that prong.

Under that prong, a plaintiff must offer a point of comparison. That is, a plaintiff must offer evidence of comparators, meaning similarly situated employees who received better treatment. "In general, a plaintiff who believes another individual is similarly situated must at least show that this comparator (1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating

---

[4] Sanchez's deposition casts doubt on whether she still advances a sex discrimination claim. In express terms, she explained that she does not believe that she was laid off because of her sex. *See* Sanchez Dep., at 140:2-5 (Dckt. No. 79-2, at 36 of 84) ("Q: . . . Do you believe you were laid off in March of 2019 because you are a female? A: No."). Still, Sanchez mentions "sex discrimination" as the sole reason that summary judgment should not be entered against her. *See* Pl.'s Resp., at 1 (Dckt. No. 85). For comprehensiveness, the Court addresses any possible sex discrimination claim.

circumstances as would distinguish his conduct or the employer's treatment of him." *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014).

Here, Sanchez has not pointed to any male employees who received preferential treatment when she was laid off in March 2019. Indeed, all the Tootsie Roll employees working in a restricted duty status at the time of Sanchez's layoff were women. Sanchez has not shown any similarly situated male employee who received better treatment – *i.e.*, a male employee who had comparable seniority to Sanchez, who worked in restricted duty status, and who was not laid off. Moreover, Tootsie Roll had previously laid off male employees in restricted duty status. Almost half of the employees who had worked in a restricted duty status – but were laid off during March 2019 – were men.

The same conclusion applies to the recalls. Sanchez has no evidence of men who received better treatment by getting recalled from a layoff before Sanchez was recalled in April 2019.[5]

Sanchez argues that 13 of the 14 employees recalled in March 2019 worked in production, and that she also could have worked in production. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 59 (Dckt. No. 84). But more than half of the employees who returned to work were women. And none of those 14 employees were in restricted duty status, meaning they were not similarly situated to Sanchez. *See* Def.'s Statement of Facts, at ¶¶ 60–62 (Dckt. No. 79). In other words, none of the recalled employees were men on restricted status.

---

[5] In its reply, Tootsie Roll objects to Sanchez's ability to discuss discrimination during her *recall*, in contrast to her *layoff*. *See* Def.'s Reply, at 6 (Dckt. No. 86). Tootsie Roll notes that Sanchez's EEOC charge and federal complaint only mention her March 1, 2019 layoff. Tootsie Roll's position isn't entirely correct. Sanchez filed her EEOC charge before she was recalled (so it could not have mentioned it), and her federal complaint references her recall. *See* EEOC Charge (Dckt. No. 26, at 34 of 45); Am. Cplt., at ¶ 66 (Dckt. No. 26, at 21 of 45). Generously construed, Sanchez's allegations about her recall arise out of her EEOC allegations about her layoff, so they remain fair game under the Court's prior Order. *See* 5/18/21 Order, at 7 (Dckt. No. 57).

The record does not include sufficient evidence to show that those 14 employees were comparators. There is no evidence about those employee's supervisors, or about whether they were subject to the same standards, or about whether they engaged in similar conduct. *See Orton-Bell*, 759 F.3d at 777. Simply put, nothing in the record shows that male Tootsie Roll employees were similarly situated and received favorable treatment compared to Sanchez.

Sanchez submits no evidence that similarly situated individuals outside her protected class received better treatment when it came to layoffs or recalls. Without that evidence, she can't make a *prima facie* case of sex discrimination based on her layoff in March 2019.

Similarly, Sanchez fails to come forward with enough evidence of national origin discrimination. In response to Tootsie Roll's motion, she did not offer evidence that a similarly situated, non-Mexican employee was treated more favorably around the time of her March 2019 layoff.

In her deposition, Sanchez brought up a purported similarly situated employee who was given more favorable treatment.[6] According to that testimony, Larry Blanchard is an African-American man, employed by Tootsie Roll around March 2019, who was not laid off when he should have been. *See* Sanchez Dep., at 44:23 – 45:2 (Dckt. No. 79-2, at 16–17 of 84).

Sanchez also pointed to Charlotte Harris, an African-American woman who apparently received special accommodations from Tootsie Roll, by allowing her increased mobility at her job. *Id.* at 36:9-22. Harris was one of the five women in restricted duty status with Sanchez in February 2019. *See* Def.'s Statement of Facts, at ¶ 38 (Dckt. No. 79).

---

[6] Notably, Tootsie Roll only submitted excerpts of Sanchez's deposition transcript. *See* Sanchez Dep., (Dckt. No. 79-2, at 1–38 of 84). Based on Tootsie Roll's submission, the Court has access to less than a fourth of Sanchez's testimony.

Blanchard and Harris do not constitute similarly situated individuals for purposes of Sanchez's March 2019 lay off. Sanchez provides no dates for when, in her view, Blanchard received special treatment. And there is no evidence about when, in her view, the company should have laid him off. There is nothing in the record about his supervisors, or about whether he was subject to the same standards.

In fact, Blanchard *was* laid off in August 2018, and he was working in a restricted duty status at that point. That's what happened to Sanchez, too, in March 2019. Blanchard retired in September 2018. *Id.* at ¶ 51. So by the time of Sanchez's layoff in March 2019, Blanchard was not even working at Tootsie Roll.

Harris does not qualify as a similarly situated employee, either. First, any facts about Harris's work "accommodations" are irrelevant to Sanchez's claim of national origin discrimination. Sanchez needs to show that Harris received favorable treatment despite dealing with the same supervisors and working under the same standards, and without differentiating or mitigating circumstances. *See Orton-Bell*, 759 F.3d at 777. References to Harris's favorable workplace conditions, without any explanation of the dates of her employment or the nature of her position, are too vague to satisfy the similarly situated employee analysis.

Second, even if Harris were a similarly situated employee, Tootsie Roll has offered a nondiscriminatory reason for laying off Sanchez instead of Harris in March 2019: seniority. *See* Def.'s Mem. in Supp. of its Mtn. for Summ. J., at 10 (Dckt. No. 78). Harris was approximately five years more senior than Sanchez at the time of Sanchez's layoff. Tootsie Roll was simply following company policy.

Sanchez does not provide any countervailing evidence casting doubt on Tootsie Roll's seniority-based layoff system, the seniority difference between Sanchez and Harris, or the

amount of restricted work that Tootsie Roll had available in February 2019. In other words, Sanchez has not carried her burden of coming forward with evidence that could support a verdict that Tootsie Roll's decision to lay her off instead of Harris was pretextual.

The Court grants summary judgment on Sanchez's Title VII discrimination claim based on her sex and national origin.

## II.    Title VII Retaliation (Count II)

Count II is a Title VII retaliation claim. Sanchez alleges that Tootsie Roll retaliated against her for engaging in various protected activities. *See* Am. Cplt., at ¶¶ 82–87 (Dckt. No. 26). Once again, Sanchez has not come forward with sufficient evidence to support her claim.

Title VII prohibits an employer from retaliating against an employee because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *See Igasaki v. Illinois Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). The claim is about retaliation for engaging in a protected activity.

To defeat summary judgment, under *McDonnell Douglas* or *Ortiz*, Sanchez must offer evidence from which a reasonable jury could find: "(1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *See Lesiv v. Illinois Cent. R.R. Co.*, 2022 WL 2711284, at *3 (7th Cir. 2022) (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)). The parties focus on the first step.

Sanchez pointed to four episodes that, in her view, constituted protected activities at the company: (1) she advised a coworker to speak with a supervisor about a sexual harassment issue, and to specifically inquire into why a camera was moved to face the coworker; (2) she

18

assisted fellow employees in her role as union steward; (3) she advised coworkers on various work-related issues and guided them through company policy; and (4) she reported fires, exhaust fumes, and employees feeling dizzy or nauseated.[7]  *See* Def.'s Statement of Facts, at ¶¶ 70–71, 73–75 (Dckt. No. 79); *see also* Sanchez Dep., at 18:2 –21:22, 64:21 – 66:4, 123:2-21 (Dckt. No. 79-2, at 6–9, 22 of 84).

Sanchez never provides dates for any of these activities.  Her descriptions of the events are vague, difficult to follow, and hard to pin down.  *See* Sanchez Dep., at 18:2 –21:22, 65:4-20 (Dckt. No. 79-2, at 6–9, 22 of 84) (describing her interactions with a coworker over the direction of a camera); *id.* at 64:21 – 66:4 (mentioning her role as union steward and helping coworkers on company policy); *id.* at 123:2-21 (describing her reports on fires, exhaust, and employees' health).  And there is no evidence of official complaints related to her activities.  *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (noting that filing an official complaint connected to a protected class is a protected activity).  So there is not much to go on, and the Court is left largely in the dark.

But, most importantly, none of her actions are "protected activities" under Title VII. Even if Sanchez filed official complaints – with more detailed descriptions – her four activities have nothing to do with opposition to an unlawful employment action.

---

[7]  Tootsie Roll's statement of facts only mentions these four alleged "protected activities."  *See* Def.'s Statement of Facts, at ¶¶ 70–71, 73–75 (Dckt. No. 79).  Sanchez admits all four activities.  *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 70–71, 73–75 (Dckt. No. 84).  While the complaint references other alleged protected activities (*e.g.*, she reported to the Wage and Hour Division that she was getting paid less than male employees, she filed a charge alleging that Tootsie Roll blocked her family and medical leave, she filed a charge about her disability), Sanchez never mentions any of them in her summary judgment filings.  *See* Am. Cplt., at ¶ 72 (Dckt. No. 26, at 27 of 45).  And those additional activities suffer from the same defects as the four listed actives in Tootsie Roll's statement of facts:  Sanchez never explains their timing, and she never submits evidence that the relevant Tootsie Roll decisionmakers had knowledge of her alleged activities during her March 2019 layoff.  So, even if the Court were to consider all the complaint's alleged protected activities, they would still fail at summary judgment.

"Protected activity is when an employee opposes her employer's non-compliance with Title VII." *Khan v. Chicago Bd. of Educ.*, 2022 WL 683748, at *10 (N.D. Ill. 2022); *see also* 42 U.S.C. § 2000e-3(a). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021).

Here, Sanchez submits no evidence that she engaged in a protected activity. Sanchez's listed activities were not complaints to Tootsie Roll about discrimination based on a characteristic protected by Title VII. And assisting other employees as a union steward does not qualify as protected activity. *See Spencer v. Corn Prod. Int'l, Inc.*, 2003 WL 1811055, at *8 (N.D. Ill. 2003) ("Serving as a union steward is not protected activity under Title VII.").

The closest candidate is encouraging an employee to talk with a supervisor about alleged sexual harassment, but that's not enough. In her response to Defendant's statement of facts, Sanchez says that there was a "sexual harassment situation" involving a coworker. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 67 (Dckt. No. 84). And in her deposition, Sanchez testified that she "assisted" a fellow employee "with her sexual harassment issue." *See* Sanchez Dep., at 17:9-11 (Dckt. No. 79-2, at 5 of 84). Sanchez then explained how she helped: "I pointed out to [coworker] that the camera had been pointed toward the area where we were working, and I asked her to speak to the supervisor about why the camera had been moved from pointing in one direction to another after the complaint." *Id.* at 18:24 – 19:5.

Again, Title VII prohibits an employer from retaliating against an employee because she "made a charge, testified, assisted, or participated" in an "investigation, proceeding, or hearing" related to a protected class. *See Igasaki*, 988 F.3d at 959. Sanchez does not provide evidence connecting her advice to her coworker about the placement of a camera and an "investigation,

proceeding, or hearing" based on sex discrimination. Encouraging someone to ask a question to a supervisor isn't enough.

In fact, Sanchez does not explain her coworker's complaint at all, so the Court does not know if it was an EEOC charge or an internal investigation. If it was an internal investigation, then Sanchez's advice could not qualify as protected activity. *See Scott v. Chevrolet of Homewood*, 2022 WL 523136, at *10 (N.D. Ill. 2022) ("[P]articipation in an internal investigation is not a 'protected activity' under Title VII.") (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010)).

If it was an EEOC charge, Sanchez's description of her advice remains too vague to support an inference that Sanchez opposed Tootsie Roll's non-compliance with Title VII. Sanchez does not provide any further details, so the Court is left only with her telling a coworker to ask why a camera was moved after that coworker filed a sexual harassment complaint. Advising a coworker to ask a question about a camera *after* she filed a complaint is far removed from testifying, assisting, or participating in an investigation, proceeding, or hearing based on sexual discrimination. So Sanchez's retaliation claim fails right out the gate for failing to show a protected activity.

But even if Sanchez engaged in protected activities under Title VII, her claim fails for another fundamental reason. There is no evidence that Tootsie Roll had any knowledge of Sanchez's alleged activities when she was laid off.

The two decisionmakers responsible for laying off employees, Jansky and Malagon, had no knowledge of Sanchez's alleged activities in February and March 2019.[8] Sanchez only

---

[8] Sanchez disputes that Jansky didn't know about her involvement with the sexual harassment "situation." *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 67 (Dckt. No. 84). But Sanchez's denial does not create a genuine issue of material fact. First, Sanchez does not point to any evidence in support

identifies Pete Lebron as being aware of her protected activities. *See* Sanchez Dep., at 66:5-13 (Dckt. No. 79-2, at 23 of 84). But Lebron is an HR manager who played no role in the decision to layoff Sanchez. *See* Def.'s Statement of Facts, at ¶ 78 (Dckt. No. 79). Indeed, Sanchez herself didn't even know who made her layoff decisions in March 2019.

Without a decisionmaker's knowledge of Sanchez's protected activities, she cannot pursue a retaliation claim based on those activities. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 513 (7th Cir. 2021) ("In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity."); *Tomanovich*, 457 F.3d at 668–69 (holding that an employer cannot penalize an employee for engaging in a statutorily protected activity if the employer did not know the plaintiff engaged in the activity). The company cannot retaliate against Sanchez for engaging in a protected activity if the decisionmaker did not know that she had engaged in a protected activity.

Finally, Tootsie Roll argues that Sanchez submitted no evidence of a causal link between her protected activities and her layoff. The Court agrees. There is simply no record evidence supporting a causal connection between Sanchez's protected activities and her layoff. The Court cannot see how her alleged activities could be a motivating factor in Tootsie Roll's decision to layoff Sanchez, particularly when the Court does not even have dates for most of the activities.[9]

---

of her denial. Second, even if Sanchez did know of her involvement with the sexual harassment issue, it still would not qualify as a protected activity.

[9] Based on her deposition, it seems that Sanchez helped her coworker with the camera in September 2018. *See* Sanchez Dep., at 17:8-11 (Dckt. No. 79-2, at 5 of 84). That's a six-month gap between her alleged protected activity and her layoff, a gap far too large to support any "suspicious timing" inference. *See, e.g.*, *Igasaki v. Illinois Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action.") (cleaned up).

### III. ADEA Discrimination (Count IV)

Sanchez also advances an age discrimination claim. Under the ADEA, it is unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *See* 29 U.S.C. § 623(a)(1). Tootsie Roll does not dispute that Sanchez is over 40 years old, making her part of the class protected by the ADEA. *See* 29 U.S.C. § 631(a).

Once again, a plaintiff can rely on the direct method, indirect method, or holistic approach to show age discrimination under the ADEA. *See Igasaki*, 988 F.3d at 960; *Carson v. Lake County*, 865 F.3d 526, 532–33 (7th Cir. 2017).

In addition, Sanchez must offer evidence that "but for [her] age, the adverse action would not have occurred." *See Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (cleaned up). "In other words, 'to recover under a theory of disparate treatment in the ADEA context, it's not enough to show that age was a motivating factor. The plaintiff must prove that, but for her age, the adverse action would not have occurred.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (2021) (cleaned up).

Sanchez does not pick a lane, but it doesn't matter – her claim fails under any framework. Her ADEA claim cannot survive summary judgment because she fails to present any evidence of age discrimination.

Sanchez does not point to coworkers outside of her protected class (*i.e.*, below 40 years old) who were given favorable treatment. At the time of the March 2019 layoff, all five employees in restricted duty status (including Sanchez) were above the age of 40. In fact, three of the four employees who remained on restricted duty status during Sanchez's layoff were *older*

than her.  *See* Def.'s Statement of Facts, at ¶¶ 38, 45 (Dckt. No. 79).  The record lacks any evidence that her age played a role in Tootsie Roll's decision to lay her off.

Simply put, Sanchez presents no evidence that her age was the but-for cause of her layoff in March 2019.  The Court grants summary judgment on Sanchez's age discrimination claim under the ADEA.

## IV.    ADA Discrimination (Count V)

Finally, Count V is a disability discrimination claim, meaning that Sanchez alleges that she was laid off because of her disability.  The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability. . . ."  *See* 42 U.S.C. § 12112(a).  To get to a jury, Sanchez needs to put forward evidence that she has a disability, and that she was laid off because of it.

While Sanchez never references a specific framework to prove her claim, Tootsie Roll again relies on the *McDonnell Douglas* burden-shifting method.  So the Court starts its own analysis with *McDonnell Douglas*.  The Court will then "assess cumulatively" all the evidence to determine whether it permits a reasonable factfinder to conclude that Sanchez was laid off because of her disability.  *See Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 686 (N.D. Ill. 2017) (quoting *David v. Bd. of Trustees of Cmty. Coll. Dist.*, 846 F.3d 216, 224 (7th Cir. 2017)).

Like her other claims, Sanchez must first "establish[] a *prima facie* case by showing:  (1) that [s]he is disabled under the ADA; (2) that [s]he was meeting h[er] employer's legitimate expectations; (3) that [s]he suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably."  *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014).

24

A disability is "a physical or mental impairment that substantially limits one or more major life activities of" the plaintiff, "a record of such an impairment," or "being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1). Sanchez's summary judgment filings never mention, let alone describe, her alleged disability. But her complaint states that she has a permanent foot disability, torn meniscus in her right knee, and a partial loss of use in her right arm and right hand, which affect her "lifestyle activities." *See* Am. Cplt., at ¶¶ 67–68 (Dckt. No. 26, at 22 of 45). Nonetheless, the Court grants summary judgment against Sanchez's ADA claim for three reasons.

First, Sanchez does not offer evidence of a specific disability, so this Court is left in the dark on whether her allegations qualify as a disability under the ADA. Sanchez hasn't submitted any evidence of her physical condition. Allegations in a complaint don't count. *See Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) ("The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence."). On that basis alone, Sanchez could not survive summary judgment.

Second, even assuming Sanchez was disabled under the ADA, she has not shown that similarly situated employees without disabilities were treated more favorably. Tootsie Roll placed Sanchez and four other employees in restricted duty status based on their inability to perform essential aspects of their jobs. Presumably, all five employees (including Sanchez) had disabilities if they were placed in the same job status, so they do not qualify as similarly situated employees *without a disability*. On the flipside, the 14 employees who returned to work in March 2019 were not on restricted duty status, so they do not qualify as *similarly situated employees* without a disability.

25

Third, Tootsie Roll again provides an explanation for its decision to layoff Sanchez: seniority. Like her Title VII claim, Sanchez has not submitted any evidence that Tootsie Roll's explanation is pretextual. At the summary judgement stage, Sanchez bears the burden of presenting evidence that Tootsie Roll hid behind a pretextual reason. She hasn't given the Court any evidentiary reason to call into question the company's seniority-based layoff system. So her ADA claim cannot survive summary judgment.

Taking a step back and viewing the evidence as a whole, in the light most favorable to Sanchez, this Court concludes that she has failed to set forth specific facts showing a genuine issue for trial on her ADA claim. *See Aberman*, 242 F. Supp. 3d at 686; *Ortiz*, 834 F.3d at 766. The record lacks any facts that Sanchez had a qualifying disability, let alone that Tootsie Roll laid her off because of it. Under the holistic approach, Sanchez's ADA claim fails.

The Court grants summary judgment on Sanchez's disability discrimination claim under the ADA.

## Conclusion

For the foregoing reasons, Tootsie Roll's motion for summary judgment is granted.

Date: July 19, 2022

_____

Steven C. Seeger
United States District Judge

26